806 F.2d 78
 36 Ed. Law Rep. 279
 VIRGINIA DEPARTMENT OF EDUCATION, Portsmouth School Board, Petitioners,
v.
SECRETARY OF EDUCATION, UNITED STATES DEPARTMENT OF
EDUCATION, Respondent, Richmond School Boeard,
Amicus Curiae.
 No. 85-2035.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 8, 1986.
Decided Nov. 25, 1986.
 
 Joan W. Murphy, Asst. Atty. Gen., Richmond, Va., for petitioner Virginia Dept. of Educ.
 James T. Martin, Asst. City Atty., Portsmouth, Va., for petitioner Portsmouth School Bd.
 George K. Martin, Wilder, Gregory & Associates, Richmond, Va., amicus curiae for Richmond School Bd.
 John R. Mason, Washington, D.C., Office of the General Counsel, U.S. Dept. of Educ., for respondent.
 Before ERVIN and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 HAYNSWORTH, Senior Circuit Judge:
 
 
 1
 This is a petition by the Virginia Department of Education and the school boards of Portsmouth and Richmond, Virginia, to review a final decision of the Secretary of Education ordering refunds totaling $317,435 in Title I funds allegedly misspent during the fiscal years 1977-1979. That sum included $234,477 spent on a Portsmouth Home School Worker program, $19,578 spent on a Richmond secondary summer school program, and $63,380 spent on a Richmond Saturday program. The Secretary found that these programs constituted general aid to the Portsmouth and Richmond schools, and that they were not targeted to the special educational needs of eligible children, as the statute requires.
 
 
 2
 In reviewing a determination by the Secretary of the misuse of Title I funds, we must consider whether the Secretary's findings are supported by substantial evidence and reflect an application of the proper legal standards. 20 U.S.C.A. Sec. 1234d(c) (Supp.1986); Bennett v. Kentucky Department of Education, 470 U.S. 656, 105 S.Ct. 1544, 84 L.Ed.2d 590 (U.S.1985).
 
 
 3
 The regulations in effect through 1977-1979 were 45 C.F.R. Secs. 116a.21, 116a.22. Generally those regulations required that the local agency identify specific educational needs for the target group of Title I children, to develop a project addressed to those needs, and to use Title I funds only in addressing those needs. Approval by the state agency was authorized if it determined that the proposed project provided reasonable promise of substantial progress in meeting the needs of the target children. General aid to the school as a whole, or aid that was not aimed specifically at the identified needs of the target children, was unauthorized and constituted misuse of Title I funds.
 
 I.
 
 4
 Portsmouth developed a Home School Worker program designed to reduce absenteeism in its eighteen schools containing Title I children among their populations. The HSW's were to serve as liaison between school and home. Early in the school day, the HSW for that school would obtain a list of all absent students. The HSW would then identify the Title I children on the list of absentees and would contact their teachers or homes, or visit their homes, to determine if there was a good reason for the absence. Once that was done, the HSW performed the same service for other absent students.
 
 
 5
 The Secretary's auditors visited four of the eighteen Portsmouth schools to which HSW's were assigned, and reviewed their records over a four month period. They determined that the HSW's provided similar attendance service for both Title I and non-Title I children, that the HSW's made about as many home visits to non-Title I children as to Title I children, and that a number of their visits were for purposes unrelated to attendance.
 
 
 6
 Substantial evidence supports the Secretary's determination that the HSW program at the four audited schools violated the applicable regulations. It is apparent that the HSW program as implemented in those four schools addressed the general needs of all students and was not confined to the special needs of Title I children.
 
 
 7
 The result of the audits of the four schools supplied an adequate basis for the conclusion that they exemplified the HSW program as implemented in all eighteen of the schools. Auditing four of the schools was a fair sampling of the eighteen. If Portsmouth and the Virginia Department of Education thought the program as operated in the four audited schools was atypical, or that the actual operation of the program in other schools met the requirements of the regulations, they should have come forward with some evidence to that effect. They were put on notice of the Secretary's contention that the audits of the four schools were representative of all eighteen schools, but came forward with no evidence that the program was operated in a different manner in other schools. Portsmouth and the Virginia Department of Education were active participants in the entire administrative process. Having come forward with no evidence that the operation of the program in some of the eighteen schools was qualifying, they cannot now reasonably contend that the Secretary may require refunds only of the money spent in the programs of the four audited schools or that the Secretary must audit each of the eighteen schools before ordering a refund of all the money spent on the entire program.
 
 
 8
 We thus conclude that the petitioners failed to carry the burden of justifying Portsmouth's HSW program at either the audited or unaudited schools.
 
 II.
 
 9
 Richmond's secondary summer school program was advanced as an "innovative" approach for the provision of remedial reading, math, and basic skills instruction to educationally disadvantaged children. It was funded entirely by $86,000 of Title I funds. Most of that money was used to provide language arts and mathematics instruction to underachieving Title I children who had been identified through low test scores. No one questioned the use of those funds, but $19,578 was spent on summer stock and music programs that were open to all interested students. The auditors determined that the expenditure of that money was a misuse of Title I funds, because the participants were all interested children and because the program was not designed to meet the special needs of Title I students in reading and math.
 
 
 10
 That determination appears clearly warranted. Indeed, the primary purpose of the music program was "to provide pupils currently enrolled in band or orchestra the opportunity of continued music education during the summer." That purpose was far afield from the purposes of Title I.
 
 III.
 
 11
 Richmond also had an extended day and Saturday program upon which it spent $63,380 of Title I funds. During the week, participation was limited to Title I children and their parents, but the Saturday programs were open to all interested students and parents. Both the extended day and Saturday programs offered instruction in such things as photography, woodworking, math tutoring, drill team and baton, needlepoint, gymnastics, clowning, guitar, electronics, piano, arts and crafts, drama, typing, sewing, reading for pleasure, creative drawing, cooking with metrics, and French.
 
 
 12
 The Secretary found that this program did not meet the requirements of Title I because participation on Saturday was not limited to Title I children and their parents, and because the offerings did not meet the identified special needs of the educationally deprived children.
 
 
 13
 We readily agree with that conclusion.
 
 
 14
 Richmond had identified the special needs of its Title I children as improvement in basic reading and math. Taking lessons in sewing and dancing, gymnastics, clowning and playing the guitar has little discernible relationship to the identified needs of the Title I children. Richmond attempts to justify its expenditure of Title I funds on these programs by suggesting that they tended to build up the confidence of unconfident Title I children and to improve their perception of school as a pleasant place to be. Whatever may be said in support of a program of confidence building and image improvement, those were not among the identified needs of Title I children. The regulations limit the expenditure of Title I funds to the service of the identified needs of Title I children.
 
 IV.
 
 15
 There is substantial evidence to support the Secretary's finding of misuse of Title I funds in Portsmouth and in Richmond. The identified expenditures did not meet the statutory and regulatory requirements for an expenditure of Title I funds, and Virginia, Richmond and Portsmouth may not retain funds that were misused. Bell v. New Jersey, 461 U.S. 773, 790-91, 103 S.Ct. 2187, 2197, 76 L.Ed.2d 312 (1983).
 
 
 16
 AFFIRMED.